UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAITLIN A., [1]<br><br>                   Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,<br><br>                   Defendant. | Case No. 2:22-cv-00003-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Caitlin A. brings this action under the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits and Social Security Income (SSI) under Title II of the Act. 42 U.S.C. § 401 *et seq.* Following the Court's consideration of the Complaint (Dkt. 1), [2] the administrative record and the parties' submissions, and for the reasons that follow, the decision of the Commissioner will be affirmed.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g). As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

**MEMORANDUM DECISION AND ORDER - 1**

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 907 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d. 625, 630 (9th Cir. 2007) (quotation omitted).

# BACKGROUND

## I.      Plaintiff's Application

Plaintiff alleges disability based on the following conditions: generalized anxiety disorder; major depressive disorder; autism; and, a math learning disability.  AR 262.[3]  At the time of her amended alleged onset date of January 7, 2017, Plaintiff was 21 years of age.  *See* AR 375.  She has a high school education and has no past relevant work experience.  AR 25, 416.

Plaintiff protectively applied for DIB on December 3, 2019, alleging an onset date of January 7, 2017.[4]  AR 13.  Her application was denied initially on April 12, 2019, and on reconsideration on July 8, 2020.  AR 13.  Plaintiff requested and obtained a hearing on April 8, 2021, before Administrative Law Judge Mark Kim.  AR 13, 169-73.  Plaintiff appeared and testified at the hearing, with a non-attorney representative; a vocational expert (VE), Tom Polsin, also testified.  AR 32-55.  On April 26, 2021, the ALJ issued a decision finding Plaintiff not disabled.  AR 13-26.  Plaintiff requested Appeals Council review, which was denied on November 10, 2021.  AR 1-6.  Plaintiff timely sought review before the Court.[5]

---

[3] Citations to "AR" denote the Administrative Record. (Dkt. 16.)

[4] At the hearing before the ALJ on April 8, 2021, Plaintiff requested to amend the alleged onset date to January 7, 2017.  AR 34-35.  This request was granted on the record.  *Id.*

[5] The parties consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Dkt. 9.)

**MEMORANDUM DECISION AND ORDER - 3**

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected… to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 414.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(c).  A severe impairment is one "which significantly limits [the claimant's] physical and mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.  *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges as severe as to preclude substantial gainful activity."  *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds.  *Yuckert*, 482 U.S. at 141.  At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional

capacity" (RFC), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairment impose.  20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e).  If they can work, the claimant is not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the Commissioner meets this burden, then the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date of January 7, 2017.  AR 15.  Therefore, the ALJ continued with the sequential process.  *Id.*

At step two, the ALJ determined that Plaintiff has the following severe impairments: "autism spectrum disorder; depressive disorder; generalized anxiety; and attention deficit hyperactivity disorder (ADHD)."  AR 16.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  AR 16-17.  The ALJ next assessed Plaintiff's residual functional capacity (RFC), finding that Plaintiff:

> [H]as the residual function capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: perform simple, routine tasks with a reasoning level of 2 or less involving only occasional and simple changes; and work involving no interaction with the public and only occasional superficial interaction with coworkers with no tandem tasks.

AR 19.

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 25. But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a kitchen helper, housekeeping cleaner, and stuffer. AR 25-26.

## DISCUSSION

Plaintiff contends that the ALJ committed one error.  Plaintiff argues that the ALJ improperly rejected medical opinions under the "supportability" and "consistency" standard.  (Dkt. 19 at 3-17.)   As more fully explained below, the Court finds that the ALJ's decision is free from reversible legal error.  Overall, the ALJ did not err in evaluating the persuasiveness of the medical record as a whole.  Accordingly, the Court will affirm the Commissioner's decision in finding Plaintiff not disabled.

## I.     Medical Opinion Evidence

### A.  Legal Standards

For claims filed on or after March 27, 2017, the revised regulations apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*"Revisions to Rules"*), 2017 WL 168819, 82 Fed. Red. 5844-01, at * 5867-68 (Jan. 18, 2017).  Under these

regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using various factors. *Id.* The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [they] considered the supportability and consistency of factors for a medical source's medical opinions… in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions… will be." 20 C.F.R. §§ 404.1520c(c), 416.920c(c)(2). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.320c(c)(2). The ALJ is not required to explain how they considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

The revised regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remains binding on the Court.  For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, serious impairment").  Nor may the ALJ dismiss medical opinions without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not support by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his own conclusions.  He must set forth [her] own interpretation and explain why they, rather than the doctors', are correct.

*Regenmitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

In other words, although the revised regulations eliminated the previous hierarchy of medical opinion testimony that provided special status to treating physicians, the ALJ still must provide sufficient reasoning for federal courts to engage in meaningful appellate review.  *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be

extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless when it is inconsequential to the ultimate non-disability decisions.  *Stout*, 454 F.3d at 1055.  In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  Courts look to the record as a whole to determine whether an error alters the outcome of a case.  *Molina*, 674 F.3d at 1115.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Stout*, 454 F.3d at 1055 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

A.  *J. Brooke Sjostrom, MS, LMHC, LCPC*

Plaintiff challenges the ALJ's assessment of the opinion of J. Brooke Sjostrom, MS, LMHC, LCPC, from a psychological evaluation conducted by Ms. Sjostrom on September 4, 2019.  (Dkt. 19 at 6-8.)  The purpose of Ms. Sjostrom's evaluation was to determine potential eligibility of Plaintiff for vocational rehabilitation services from the State of Idaho.  AR 22.  Ms. Sjostrom administered two procedures: the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) and the Personality Assessment Inventory (PAI).  AR 22, 400-25.  The WAIS-IV tests the "intellectual ability of adults."  AR 404.  Ms. Sjostrom interpreted Plaintiff's WAIS-IV results.  AR 405-06.  She opined that

Plaintiff's abilities to process visual material quickly, sustain attention, concentrate, and exert mental control were below average. *Id.*

The PAI assesses features relevant for clinical diagnosis, such as correct completion of test items, carelessness, reading difficulties, confusion, exaggeration, malingering or defensiveness. AR 406. Ms. Sjostrom also interpreted the results from the PAI test. AR 407-08. She opined that Plaintiff's "profile is marked by significant elevations, indicating the presence of clinical features that are likely to be sources of difficulty for [Plaintiff]." AR 405. Further, Plaintiff is "likely to display a variety of maladaptive behavior patterns aimed at controlling anxiety," which she experiences at a "discomforting level." *Id.* Ultimately, Ms. Sjostrom concluded that Plaintiff met the diagnostic criteria for generalized anxiety disorder, unspecified depressive disorder, autism spectrum disorder, and attention deficit hyperactivity disorder (ADHD). AR 407-08. As such, she opined that Plaintiff's deficits in interacting with others could be a hindrance in the workplace, making communication with coworkers and supervisors challenging, and that interference from her ADHD and anxiety symptoms could make learning new skills difficult.

On November 20, 2019, Ms. Sjostrom submitted an addendum to the psychological evaluation. AR 22 (*see* AR 409-13). During a separate, follow-up evaluation on October 21, 2019, Ms. Sjostrom administered another procedure, the Woodcock-Johnson: Tests of Achievement-3rd Edition, Normative Updates (WJ-III-NU). AR 409-13. The WJ-III-NU is a "comprehensive set of individually administered tests for measuring cognitive abilities, scholastic aptitudes, and achievement." AR 410.

**MEMORANDUM DECISION AND ORDER - 10**

In interpreting Plaintiff's scores from this evaluation, Ms. Sjostrom opined that Plaintiff scored similarly to a fourth-year college student in Broad Reading; a first-year college student in Broad Written Language; an eighth grader in Written Expression; a fifth grader in Broad Mathematics; and a fourth grader in Math Calculation Skills.

When viewed in conjunction with the WAIS-IV and PAI results, Ms. Sjostrom determined that Plaintiff met the criteria for a diagnosis of Specific Learning Disorder, with moderate impairments in mathematics.  AR 411.  In evaluating Plaintiff for a second time, Ms. Sjostrom concluded that Plaintiff's overall level of social, emotional, and adaptive functioning was more impaired than originally assessed.  AR 412.  Therefore, Ms. Sjostrom expressed concern about Plaintiff's ability to function in a full-time, unsheltered work environment and recommended that Plaintiff apply for social security benefits until she could attain a work environment accommodating the full extent of her disabilities.  AR 412.

The ALJ found the opinions of Ms. Sjostrom partially persuasive.  The ALJ found the opinions persuasive with regard to Plaintiff's difficulty in learning new tasks and the need for a proper learning environment due to Plaintiff's ADHD and reported anxiety, her slightly pressured speech, and her response to concentration testing.  AR 22-23.  The ALJ found the opinions unpersuasive in two respects: (1) although the opinion about communication difficulties was somewhat supported by Plaintiff's "awkward social interaction and slightly pressured speech during evaluation," the opinion was not consistent with Plaintiff's open and cooperative demeanor with Ms. Sjostrom; and (2) the opinion that Plaintiff's overall level of social, emotional, and adaptive functioning being

**MEMORANDUM DECISION AND ORDER - 11**

more impaired than previously assessed after Ms. Sjostrom's evaluation was not

"internally consistent."  AR 23-24.

Plaintiff asserts that the ALJ erred in finding Ms. Sjostrom's opinions only

somewhat persuasive.  (Dkt. 19 at 6-8.)  Specifically, Plaintiff contends that Ms.

Sjostrom's opinions supported greater limitations than those articulated by the ALJ, and

that the ALJ failed in articulating to the contrary.  (Dkt. 19 at 13.)

The ALJ found Ms. Sjostrom's opinion that Plaintiff had difficulty learning new

tasks and that she required a proper learning environment was partially persuasive,

because it was supported by Ms. Sjostrom's clinical findings.  AR 22-24.  The more

relevant the objective medical evidence and supporting explanations presented by a

medical source to support their medical opinions, the more persuasive that opinion will

be. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).  Ms. Sjostrom opined Plaintiff's

testing "was not indicative of any significant impairments that might impede her ability

to function in an entry-level employment position," but that learning tasks quickly and

easily would be challenging for her.  AR 408.  The ALJ concluded that this aspect of the

opinion was supported by the WAIS-IV results indicative of impaired concentration and

pressured speech, as well as Plaintiff's own reports of anxiety to Ms. Sjostrom.  AR 400-

403.  As a result, the ALJ reasonably assessed these limitations by restricting Plaintiff to

simple, routine tasks with reasoning level one or two, as discussed above, and only

occasional, simple changes in the RFC.  AR 19.

The ALJ also found Ms. Sjostrom's opinion regarding Plaintiff's communication

difficulties to be partially persuasive, as it was partially supported by examination

**MEMORANDUM DECISION AND ORDER - 12**

findings and observations.  AR 23.  Ms. Sjostrom noted Plaintiff's social awkwardness, and that her speech was "a bit pressured in terms of rate, but appropriate in terms of volume" during their encounter.  AR 403.  However, despite meeting Ms. Sjostrom for the first time on September 4, 2019, Plaintiff was talkative and "presented as generally open and cooperative;" appeared genuine in her responses; understood the instruction provided; and was attentive and invested in performing well. AR 403.  Further, Plaintiff performed better on verbal than nonverbal tasks, and her verbal reasoning abilities were in the high average range.  AR 405.  As such, the ALJ reasonably assessed these social limitations and included them in the RFC by restricting Plaintiff to work involving no interaction with the public, only occasional and superficial interaction with coworkers, and no shared work tasks. AR 19.

Finally, the ALJ found the greater limitations included in Ms. Sjostrom's November 2019 addendum to be unpersuasive, because such limitations were not supported by Ms. Sjostrom's own findings.  AR 23-24.  In administering the WJ-III-NU, Ms. Sjostrom found that Plaintiff exhibited college or graduate student levels of broad reading, basic reading, and broad written language, but fifth-grade levels of broad mathematics and fourth-grade levels of math calculation skills.  AR 409-11.  The ALJ found that Ms. Sjostrom's opinion was inconsistent with her own diagnosis of Plaintiff's impairment in math as only moderate, according to DSM-5 criteria.  Further, the ALJ found Ms. Sjostrom's opinion was inconsistent with the findings in that, although Ms. Sjostrom opined Plaintiff's learning disability "could contribute to further difficulties occupationally," her work potential profile showed "there is a high probability that the

individual will function relatively effectively and experience a minimum of difficulty in a work situation."  AR 411-12.  Specifically, the only area where Plaintiff scored below the threshold of five was in social resources (four); "scores of four or lower suggest that the individual may experience difficulties unless appropriate support can be provided."  AR 412.  Although the ALJ found these internal inconsistencies rendered Ms. Sjostrom's opinion in the November 2019 addendum unsupported, he cited three occupations which were limited to rudimentary, level one math.  AR 26.

Defendant argues that Plaintiff seeks to recast the test result cited by Ms. Sjostrom in such a way as to support greater limitations.  (Dkt. 21 at 9.)  The Court agrees.  Even if "evidence exists to support more than one rational interpretation, the Court must defer to the Commissioner's decision."  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Thus, the ALJ's conclusions regarding Ms. Sjostrom's opined limitations, which were incorporated by the ALJ in the RFC, were supported by substantial evidence.

B.  *Mary Anderson, BS, QIDP*

Plaintiff also challenges the ALJ's assessment of the opinion of Mary Anderson, BS, QIDP, from a psychological evaluation conducted by Ms. Anderson on February 2, 2021.  (Dkt. 19 at 14-17.)  The purpose of Ms. Anderson's evaluation was to assess Plaintiff's recent medical, social, and developmental abilities.  AR 24.

Ms. Anderson administered adaptive behavior testing on February 2, 2021.  AR 604-07.  Plaintiff's adaptive behavior was evaluated using the Scales of Independent Behavior—Revised (SIB-R).  AR 604.  This test measures broad independent age, which

is a measure of overall adaptive behavior based on an average of four different areas of adaptive functioning: motor skills, social interaction and communication skills, personal living skills, and community living skills.  AR 604.

The ALJ found the opinions of Ms. Anderson partially persuasive.  The ALJ found the opinion persuasive in regard to her finding that Plaintiff did not have a developmental disability, because Plaintiff's WAIS-IV scores, grades, and the fact that she graduated from high school supported such a conclusion.  AR 25.  The ALJ found the opinion unpersuasive in only one respect—the opinion that Plaintiff has adaptive limitations is inconsistent with Plaintiff's report of daily activities to Dr. Olsen in 2014 and her hearing testimony about her daily activities.  AR 25.  Specifically, the ALJ noted that Plaintiff reported and testified that "she helps with household chores, shops, takes care of personal hygiene independently (with reminders), take care of the family's pets, and enjoys hobbies of reading, watching TV, crocheting, and doing arts and crafts projects."

First, with regard to ALJ's finding of persuasiveness, the Court concludes the ALJ interpreted a denial by Ms. Anderson of Plaintiff's request for a Developmental Disability (DD) Waiver too broadly.  AR 575-576.  Although Ms. Anderson determined that Plaintiff did not meet the ICF/IID Level of Care (LOC) criteria for adults with developmental disabilities pursuant to IDAPA 16.03.10.584, this finding does not necessarily render Plaintiff non-disabled.  Rather, such a finding only means that Plaintiff does not require "the consistent, intense, frequent services including active treatment provided in an ICF/IID or receive services under one of Idaho's programs to assist individuals with intellectual disabilities or a related condition to avoid institutionalization

**MEMORANDUM DECISION AND ORDER - 15**

in an ICF/IID." Idaho Admin. Code r. 16.03.10.584 (2022). Specifically, Ms. Anderson found that, although Plaintiff does not qualify for a DD Waiver, Plaintiff's inventory of individual needs qualified her for a non-waiver DD State Plan. AR 577-78, 587. Because Plaintiff demonstrated marginally serious problems behaviors, she will require intermittent support, much more than others her age. AR 606. Ultimately, Ms. Anderson qualified her denial with Plaintiff's need for intermittent support throughout the day. Nevertheless, the ALJ found the denial persuasive, absent any reference to Ms. Anderson's qualification that Plaintiff will need intermittent support. Such a wholesale endorsement of Ms. Anderson's denial of Plaintiff's request is a legal error.[6]

Second, the ALJ, however, may consider the inconsistency between a physician's opinion and a claimant's daily activities as a specific and legitimate reason for discounting that physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ was not persuaded by Ms. Anderson's opinion about Plaintiff's adaptive skills limitations and found the opinion inconsistent with Plaintiff's reported daily activity level. AR 25. Ms. Anderson noted that, although Plaintiff's engagement with others was limited by COVID-19 at the time assessed, Plaintiff and her mother were involved in a group that performed Middle Ages reenactments. AR 569. The group met in person for events and campouts but on Zoom due to the pandemic. AR 569. Ms. Anderson also noted that Plaintiff had close friends from high school, but that the pandemic had made in-person contact inadvisable. AR

---

[6] As explained below, the Court finds this error was harmless.

**MEMORANDUM DECISION AND ORDER - 16**

569.  Plaintiff lived for a period of time with a friend she had met at a convention, but she

eventually moved back with her family.  AR 569.  Plaintiff also reported that she was

working at Home Depot at the time of Ms. Anderson's assessment.  However, Plaintiff

described this job as temporary, indicating she planned to find a different one.  AR 572-

73.  Further, Plaintiff reported she planned to volunteer at a shelter, or a local theater.

AR 574. The ALJ reasonably found these activities were inconsistent with the extreme

adaptive limitations opined by Ms. Anderson.

Relatedly, Plaintiff contends that the ALJ erred in his analysis because the ALJ

failed to account for Plaintiff's hygiene issues that made her unfit for employment.  (Dkt.

19 at 15.)  During her evaluation, Ms. Anderson found that Plaintiff's self-care skills

were limited, and that tasks involving basic grooming and health maintenance would be

very difficult for Plaintiff.  AR 605. Specifically, Ms. Anderson noted that, while Plaintiff

independently bathed and groomed herself, she often required verbal reminders to

complete such tasks.  AR 592.  Plaintiff argues that, because hygiene had been an "issue

impeding her employment," the ALJ erred in his analysis.  (Dkt. 19 at 25.)  However, as

Defendant references, Plaintiff first noted in her function report that phone alerts and

alarms helped remind her to take care of personal needs and grooming.  AR 297.

Plaintiff also failed to demonstrate how this affected her ability to perform basic work

activities.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001).

Plaintiff also contends that activities less than fulltime work—as most non-work

activities can be described—are not dispositive regarding the ability to work full-time.

(Dkt. 19 at 15.)  However, as Defendant argues, the ALJ may consider any work activity,

**MEMORANDUM DECISION AND ORDER - 17**

including part-time or volunteer work, in determining whether a claimant is disabled. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).  Further, as the Ninth Circuit articulated in *Burch v. Barnhart*, although evidence of a claimant's daily activities may also lend itself to an interpretation more favorable to the claimant, an ALJ's differing interpretation can still be rational, and the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (internal quotation marks and brackets omitted). Despite Plaintiff's objections, the Court finds Plaintiff has not shown that the ALJ's assessment of Ms. Anderson's opinion was not supported by substantial evidence.  Thus, the ALJ was justified in finding Ms. Anderson's opinion unpersuasive in this regard.

Overall, although the ALJ erred in interpreting Ms. Anderson's denial of Plaintiff's request for a DD Waiver, the Court finds such error was harmless.  An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Here, regardless of the overbroad interpretation of the denial, the ALJ's error was not inconsequential to the ALJ's assessment of the limitations included in the RFC and the ultimate decision.  In determining Plaintiff's RFC, the ALJ accounted for the numerous adaptive limitations, such as contact with the public and communication with coworkers, noted by Ms. Anderson.  Thus, the ALJ did not err in partially rejecting Ms. Anderson's opinions regarding Plaintiff's inability to perform basic work activities.

C.  *Pamela Olsen, Ph.D.*

**MEMORANDUM DECISION AND ORDER - 18**

Finally, Plaintiff challenges the ALJ's findings regarding Dr. Pamela Olsen's assessment of Plaintiff conducted on July 30, 2014, two and one-half years prior to Plaintiff's amended alleged disability onset date in January 2017.  AR 549-56.

The ALJ found the psychological assessment of Plaintiff conducted by Dr. Pamela Olsen on July 30, 2014, unpersuasive for two reasons: (1) the assessment was conducted in the remote past, and (2) the assessment was "not consistent with some ratings."  AR 24.  Specifically, the ALJ noted that Plaintiff's educational records showed her "grades were generally above average with only three facility [sic] grades," and the "objective ratings of the WAIS-IV…revealed a full[-]scale IQ."  AR 24.  Both Plaintiff and Defendant agree that the ALJ likely intended to write "failing grades," rather than "facility grades," in reference to his finding that Plaintiff's grades were generally above average.

The ALJ did not err in rejecting Dr. Olsen's opinion.  First, Plaintiff contends that the ALJ's rejection of Dr. Olsen's opinion based on remoteness in time fails to support the ALJ's conclusion.  Plaintiff correctly articulates that Dr. Olsen's opinion "provides historical context," but it is also clear from case law that "[m]edical opinions that predate the alleged onset of disability are of limited relevance."  *Jenkins v. Astrue*, Case No. 1:12-cv-00034-REB, 2013 WL 1000602 (D. Idaho Mar. 13, 2013) (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (internal citations omitted)).  Here, Dr. Olsen's opinion predates Plaintiff's alleged onset date by over two years.

**MEMORANDUM DECISION AND ORDER - 19**

Yet, even if medical records before the alleged onset date are of "limited relevance," the ALJ cannot completely ignore the medical evidence predating the alleged onset date because the ALJ must consider all medical opinion evidence. *See Jenkins*, at *5. Here, the ALJ did not simply ignore Dr. Olsen's medical opinion. Rather, beyond rejecting Dr. Olsen's opinion for its remoteness, the ALJ also rejected the opinion due to its overall inconsistency with Plaintiff's average full-scale IQ determined by the WAIS-IV and Plaintiff's educational record showing above average grades. Therefore, the ALJ did not commit legal error in rejecting Dr. Olsen's opinion.

Finally, Plaintiff argues that, if the ALJ had "correctly identified the consistency and supportability existing" among the opinions of Dr. Olsen, Ms. Sjostrom, and Ms. Anderson, the ALJ would have been "compelled" to find Dr. Olsen's opinion, as well as Ms. Sjostrom's and Ms. Anderson's opinions, persuasive. (Dkt. 19 at 17.) Logically, Plaintiff's sequential assertion—if the ALJ found Dr. Olsen's consistent and well-supported, then Dr. Olsen's opinion would have been persuasive in fact—is correct. However, Plaintiff's hypothetical is reaching and goes beyond what should be afforded by the Court's review on appeal.

As Defendant notes, this argument mischaracterizes the ALJ's role as the final decisionmaker regarding the evidence in the record. (Dkt. 21 at 11-12.) The Ninth Circuit has continuously held that the Court's role in reviewing the ALJ's decision is to "see if the ALJ's conclusions are supported by substantial evidence," not to "retry the case or alter credibility determinations and factual findings where the evidence is susceptible to more than one rational interpretation." *Moncada v. Chater*, 60 F.3d 521,

**MEMORANDUM DECISION AND ORDER - 20**

524-25 (9th Cir. 1995).  "An ALJ's RFC finding need only be consistent with relevant

assessed limitations and not identical to them."  *Mendoza v. Kijakazi*, 1:19-CV-1371-

HBK WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (citing *Turner v. Comm'r Soc. Sec.*,

613 F.3d 1217, 1223 (9th Cir. 2010).  First, the ALJ's computation of Plaintiff's RFC is

consistent with the medical record as a whole.  The ALJ determined that Plaintiff had an

RFC to perform a "full range of work at all exertional levels" with nonexertional

limitations, including Plaintiff being limited to performing simple and routine tasks with

a reasoning level of 2 or less, performing tasks involving only occasional and simple

changes, not interacting with the public, and only occasionally and superficially

interacting with coworkers with no tandem tasks.  AR 19.  Although Dr. Olsen opined

that Plaintiff exhibited cognitive and social limitations, the ALJ accounted for Plaintiff's

actual capabilities and listed limitations that are appropriately reflected and incorporated

in Plaintiff's RFC.  *Compare* AR 555, *with* AR 17-19.

Second, the ALJ's step five finding did not contradict any medical opinion found

in the record.  Even though Plaintiff suggests that the ALJ's rationale was conclusory in

translating Plaintiff's symptoms and medical records to an RFC of a "full range of work"

with cognitive and social limitations, the ALJ was translating the only recorded

limitations to an RFC that is consistent with the record as a whole.  *See* 20 C.F.R. §

404.1546(c); SSR 96-5p, available at 1996 WL 374183, at *5.

Contrary to Plaintiff's argument, the claimant has the burden of establishing

functional limitations and proving she was disabled.  *Valentine*, 574 F.3d at 689.  "The

ALJ is responsible for studying the record and resolving any conflicts or ambiguities in

**MEMORANDUM DECISION AND ORDER - 21**

it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).  Further, the ALJ is required to develop the record only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  Here, the ALJ was required to utilize the whole record, not only the medical opinions, in formulating Plaintiff's RFC. Additionally, Plaintiff has not argued that the record was inadequate for proper evaluation of the evidence without another medical opinion, nor pointed to other medical opinions or evidence in the record that contradict the ALJ's ultimate conclusion.  Plaintiff merely disagrees with the same.

In performing step five of the sequential disability determination, the ALJ concluded that Plaintiff could perform jobs with an unskilled base within Plaintiff's RFC, including work as a kitchen helper, housekeeping cleaner, and stuffer, based on the ALJ's translation of the medical records in a succinct RFC.  AR 21, 23; *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  Thus, because the only limitations available in the record are those outlined within the RFC, and those limitations exceed the ALJ's ultimate conclusion, the Court finds the ALJ properly evaluated the persuasiveness of Dr. Olsen's medical opinion.  Ultimately, Plaintiff has not demonstrated that the ALJ's evaluation of the medical opinions lacks substantial evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court will affirm the Commissioner's decision.

**MEMORANDUM DECISION AND ORDER - 22**

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1)  The decision of the Commissioner of Social Security be AFFIRMED; and

2)  Judgment will be ENTERED consistent with the above in favor of Defendant.

DATED: March 22, 2023

Honorable Candy W. Dale
United States Magistrate Judge